*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

## UNITED STATES
Appellee

**v.**

## Andrew P. WITT, Senior Airman
United States Air Force, Appellant

### No. 15-0260
Crim. App. No. 36785

Argued April 26, 2016—Decided July 19, 2016

Military Judge: W. Thomas Cumbie

For Appellant: *Brian L. Mizer,* Esq. (argued); *Major Daniel E. Schoeni* and *Major Thomas A. Smith* (on brief).

For Appellee: *Gerald R. Bruce,* Esq. (argued); *Colonel Martin J. Hindel, Colonel Katherine E. Oler, Lieutenant Colonel Nurit Anderson, Lieutenant Colonel Roberto Ramirez, Major Matthew J. Neil*, and *Major Gary M. Osborn* (on brief).

Judge STUCKY delivered the opinion of the Court, in which Chief Judge ERDMANN, Judges RYAN and OHLSON, and Senior Judge COX, joined.

_____

Judge STUCKY delivered the opinion of the Court.

Sitting en banc, the United States Air Force Court of Criminal Appeals (CCA) set aside Appellant's death sentence. At the Government's request, the CCA reconsidered, again sitting en banc, and affirmed the death sentence. The case is before us for mandatory review pursuant to Article 67(a)(1), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 867(a)(1) (2012).

As a preliminary matter, we specified two issues: (1) whether the CCA, sitting en banc, had authority to reconsider a previous en banc decision; and, (2) whether it could do so when the composition of the en banc court had changed. We hold that the CCA had authority to reconsider its previous en banc decision, even though the composition of the court changed, but that any judge present for duty at the time the first opinion issued who did not participate in that

decision was disqualified from later participation in the case.

## I. Procedural History

A general court-martial convicted Appellant of the attempted premeditated murder of Senior Airman (SrA) Jason King and the premeditated murders of SrA Andrew Schliepsiek and his wife Jamie Schliepsiek. Articles 80 and 118, Uniform Code Military Justice (UCMJ), 10 U.S.C. §§ 880, 918 (2012). On October 13, 2005, the court sentenced Appellant to death. The convening authority approved the findings and sentence as adjudged.

The CCA, sitting en banc,[1] affirmed the findings but set aside the sentence and ordered a rehearing, holding Appellant's defense counsel constitutionally ineffective for failing to investigate certain mitigating evidence. *United States v. Witt* (*Witt I*), 72 M.J. 727, 758–66 (A.F. Ct. Crim. App. 2013) (en banc). The Government moved for reconsideration and reconsideration en banc, which was granted. *United States v. Witt* (*Witt II)*, 73 M.J. 738, 753 (A.F. Ct. Crim. App. 2014) (recon) (en banc). On reconsideration, the CCA held that the trial defense counsel's defective performance did not result in prejudice and affirmed the approved findings and sentence. *Id.* at 825.

## II. En Banc CCA May Reconsider Its En Banc Decision

Appellant argues that Article 66(a) and precedent from this Court prohibit a CCA from reconsidering an en banc opinion. They do not.

As originally enacted, Article 66(a), UCMJ, provided that "the Judge Advocate General of each of the armed forces shall constitute in his office one or more boards of review, each composed of not less than three officers or civilians." Act of May 5, 1950, ch. 169, Pub. L. No. 81-506, 64 Stat. 107, 128 (Article 66(a)). The Judge Advocates General were required to "prescribe uniform rules of procedure for proceedings in and before the boards of review." 64 Stat. at 129.

---

[1] The Government argued that this first sitting was not en banc. We reject this contention. The record clearly indicates that it was.

The Court of Military Appeals (CMA) noted that "The boards of review were separate and relatively autonomous; they were not constituents of a larger consolidated entity." *United States v. Chilcote*, 20 C.M.A. 283, 285, 43 C.M.R. 123, 125 (1971). Each board of review had the inherent authority to reconsider its own opinion. *See United States v. Henderson*, 52 M.J. 14, 20 (C.A.A.F. 1999) (citing *United States v. Sparks*, 5 C.M.A. 453, 18 C.M.R. 77 (1955); *United States v. Corbin*, 3 C.M.A. 99, 11 C.M.R. 99 (1953); *United States v. Reeves*, 1 C.M.A. 388, 3 C.M.R. 122 (1952)).

As part of the Military Justice Act of 1968, Congress amended Article 66(a) to replace the "one or more boards of review" with one court that could sit in panels or en banc "in accordance with the [uniform] rules [of procedure] prescribed" by the Judge Advocates General.[2] Pub. L. No. 90-632, 82 Stat. 1335, 1341 (1965); *see* Article 66(f), UCMJ. Despite this amendment, the CMA held that Article 66 did not permit en banc reconsideration of a panel decision and the uniform rules were "not an independent grant of substance that would broaden the authority contained in Article 66(a)." *Chilcote*, 20 C.M.A. at 286, 43 C.M.R. at 126.

Article 66(a) was amended again by the Military Justice Act of 1983, Pub. L. No. 98-209, 97 Stat. 1393 (1983), "to specifically overrule the *Chilcote* decision." *Henderson*, 52 M.J. at 20; *see United States v. Flowers*, 26 M.J. 463, 464 (C.M.A. 1988). The amendment provided for reconsideration of a panel decision by the court sitting as a whole. *Henderson*, 52 M.J. at 20.

In *Henderson*, the question before this Court was whether, in light of the 1983 amendment, a panel could reconsider its own opinion or reconsideration was limited to the court sitting as a whole. 52 M.J. at 19. We held that a panel was still authorized to reconsider its own decision. *Id.* at 20. Citing the uniform rules of the Judge Advocates General, we noted: "Reconsideration of a decision by a Court of Criminal Appeals is provided for without regard to whether it is sitting as a panel or as a whole." *Id.* (citing CCAs R. 4, 17, 19).

---

[2] Now known as the Courts of Criminal Appeals Rules of Practice and Procedure (CCAs R.).

Appellant correctly argues that the CCAs are courts of limited jurisdiction, that neither the plain language of Article 66 nor its legislative history provides for en banc reconsideration of an en banc opinion, and that the uniform rules prescribed by the JAGs cannot confer jurisdiction on the CCAs. However, these arguments miss the point.

As we have held continuously since the UCMJ was enacted, military appellate courts have the inherent authority to reconsider their own decisions. *See id.*; *United States v. Kraffa*, 11 M.J. 453, 455 (C.M.A. 1981) (at least "until the possibility of reconsideration is removed"); *United States v. Jackson*, 2 C.M.A. 179, 182, 7 C.M.R. 55, 58 (1953) (stating that this Court wishes "to avoid a position which might operate to deprive a military service of full opportunity to correct the errors of its own tribunals"); *Reeves*, 1 C.M.A. at 390–91, 3 C.M.R. at 124–25 (stating that the boards of review "should have the right to correct clerical errors, inadvertently entered decisions, and those decisions which are clearly wrong as a matter of law"). The CCAs Rules are not the basis for this conclusion, although they are consistent with it. *Henderson*, 52 M.J. at 19 (stating that the uniform rules prescribed by the Judge Advocates General pursuant to Article 66(f) provided for reconsideration "without regard to whether [the CCA] is sitting as a panel or as a whole"); *see* CCAs R. 17(c), 19(b).

We hold, therefore, that the CCA sitting en banc had the authority to reconsider its own decision, consistent with CCAs R. 19.

## III. The Reconsidering Court Was Improperly Composed

### A. Background

The CCA first heard oral argument in this case on October 11, 2012. *Witt I* was issued ten months later, on August 9, 2013. Four judges, present for duty on that date, declined to participate in *Witt I* because of their arrival at the CCA well after oral argument and conference but shortly before the opinion issued. Three of those judges, however, subsequently participated in *Witt II*.[3]

---

[3] Four other judges then present recused themselves because of prior involvement with the case. They did not further partici-

## B. Discussion

The Code of Conduct for United States Judges (CCUSJ) provides: "A judge should hear and decide matters assigned, unless disqualified …."[4] Canon 3(A)(2). Although by its own terms, the CCUSJ does not apply to this Court or the CCAs,[5] we have adopted it. *United States v. Butcher*, 56 M.J. 87, 91 (C.A.A.F. 2001); *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001). The Air Force, however, has not. Instead, it adopted a modified version of the American Bar Association's 1990 Model Code of Judicial Conduct: The Air Force Uniform Code of Judicial Conduct (AFUCJC). Dep't of the Air Force, Inst. 51-201, Law, Administration of Military Justice, Attachment 5, pt. I (June 6, 2013) [hereinafter AFI 51-201]; *see Butcher*, 56 M.J. at 91 (recognizing the applicability of the AFUCJC to Air Force judges).

An Air Force appellate military judge "shall hear and decide matters assigned to the judge, except those in which disqualification is required." AFI 51-201, AFUCJC R. 3B(1). The CCA has not addressed the meaning of AFUCJC R. 3B(1). Nevertheless, the ABA's comment on the Model Rule[6] that was the basis for AFUCJC R. 3B(1) is consistent with both the CCUSJ and the Supreme Court's view of the duties of a judge: Although a judge has a duty not to sit when disqualified, the judge has an equal duty to sit on a case when not disqualified. *Laird v. Tatum*, 409 U.S. 824, 837 (1972). A judge who is present for duty does not have the discretion to not participate in an assigned case, absent exceptional circumstances not present here.

---

pate in the case and are not included in the subsequent discussion.

[4] *See* http://www.uscourts.gov/judges-judgeships/code-conduct-united-states-judges (last visited July 12, 2016).

[5] *Id.* at Introduction.

[6] Arthur H. Garwin et al., *Annotated Model Code of Judicial Conduct* 142–44 (2d ed. 2011). The Model Code was revised and reorganized in 2007. The duty to sit now appears in Model Rule 2.7: "A judge shall hear and decide matters assigned to the judge, except when disqualification is required by Rule 2.11 or other law." *Id.* at 142.

Chief Judge Everett's opinion in *United States v. Fimmano*, is instructive. 9 M.J. 256 (C.M.A. 1980) (Everett, C.J., memorandum opinion). In that and several other cases, Chief Judge Everett declined to sit on certain petitions for reconsideration which were pending when he joined the Court. This Court's rule on reconsideration at the time was totally silent on who could vote on a petition, or whose assent was necessary. *See* C.MA. R. 29, 4 M.J. cxvi (1977). Chief Judge Everett stated, in words of particular relevance to the CCAs, that:

> [T]he contention has been voiced that to allow reversal of a decision by the vote of succession judges after a petition for rehearing has been submitted would injure public confidence in appellate tribunals. *Of course, this danger would be heightened if … the judges had no fixed tenure on an appellate tribunal, so that the power to … appoint new judges would carry with it the power to change the results of specific cases.*

*Fimmano*, 9 M.J. at 258 (emphasis added) (citation omitted).[7]

Such a problem of appearances and public confidence is precisely what we have here. CCA R. 17(b) clearly comprehends that all judges not recused will participate in any vote on en banc consideration: "The suggestion of a party for consideration or reconsideration by the Court as a whole shall be transmitted to each judge of the Court who is present for duty …." Several judges present for duty declined to sit for the initial en banc consideration yet sat for reconsideration en banc and reversed the original result.[8] The Government

---

[7] Judge Effron's opinion in *United States v. Gorski*, 48 M.J. 317 (C.A.A.F. 1997) (Effron, J., memorandum opinion), is wholly distinguishable. In that case, because of an unguarded remark made from the bench during oral argument by another judge, Judge Effron was faced with a motion to recuse himself. While the motion had no substantive merit, Judge Effron felt that his impartiality might be questioned and therefore recused himself anyway. This is clearly much closer to the situation of the judges in the present case who recused themselves because of some prior involvement.

[8] One of the judges who declined to participate in the original en banc decision was appointed to serve as chief judge for the re-

then opposed the defense's motion to disclose the votes on the motion to reconsider and the motion was denied.[9] Particularly in the unique context of capital litigation, this is exceedingly problematic.

The refusal of a judge who is present for duty and not disqualified to participate amounts to disqualification. Once disqualified, the judge is prohibited from further participation in the case.[10] *See United States v. Roach*, 69 M.J. 17, 20 (C.A.A.F. 2010); *see also United States v. Thornton*, 69 M.J. 178, 178 (C.A.A.F. 2010) (summary disposition); *Walker v. United States*, 60 M.J. 354, 358 (C.A.A.F. 2004); Richard E. Flamm, *Judicial Disqualification: Recusal and Disqualification of Judges* § 22.1 (2d ed. 2007).

In Appellant's case, three judges who were present for duty at the time *Witt I* issued but did not participate may have participated in the vote to reconsider[11] and did participate in *Witt II*. We hold that the failure of these judges to participate in *Witt I* amounted to de facto disqualification and, that they were therefore prohibited from further participation in the case.

---

consideration and appears to have participated in the vote to reconsider.

[9] Appellant moved the CCA to disclose the judges who participated in the vote to reconsider and the votes of the individual judges. The Government opposed on the grounds that, in the absence of evidence to the contrary, the judges of the CCA are presumed to know and follow the law and disclosure of the votes would pierce the veil of the CCA's deliberative process. We disagree. How a judge votes on a motion to reconsider is not part of the deliberative process and is subject to discovery.

[10] We are aware that in a recent case, a justice of the Supreme Court recused himself and then returned to participation in the case. *See American Broadcasting Companies, Inc. v. Aereo, Inc.*, No. 13-461 (Apr. 16, 2014) (docket entry noting justice was no longer recused), http://www.supremecourt.gov/search.aspx?filename=/docketfiles/13-461.htm. The case cited is clearly a civil one, where a simple stock holding or other investment could give rise to recusal until it is divested. *See* 28 U.S.C. § 455(f) (2012). That is not the case here.

[11] *See supra* note 10.

Having found error in the participation of three judges in *Witt II*, we must determine whether the error prejudiced Appellant's substantial rights. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2012). In *Liljeberg v. Health Services Acquisition Corp.*, the Supreme Court held that violations of 28 U.S.C. § 455(a), which concerns the disqualification of "[a]ny justice, judge, or magistrate judge of the United States," could be evaluated for harmlessness by examining three factors: "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." 486 U.S. 847, 862, 864 (1988).

Although CCA judges are not "judges of the United States," we have applied the *Liljeberg* factors in evaluating the participation of recused judges in the military justice system.[12] *See Roach*, 69 M.J. at 20–21. In *Roach*, we found the third *Liljeberg* factor determinative:

> First, public confidence in the military judicial process is undermined where judges act in cases from which they are recused. This is true, whether the judge's role is significant or minimal…. [A] military judge is recused or he is not. A military judge who acts inconsistently with a recusal, no matter how minimally, may leave a wider audience to wonder whether the military judge lacks the same rigor when applying the law.

*Id.*

Consistent with this precedent, we hold that the participation of disqualified judges in the reconsideration process produced a significant "risk of undermining the public's confidence in the judicial process," *Liljeberg*, 48 U.S. at 864, and thus prejudiced Appellant's substantial rights. Article 59(a), UCMJ. Furthermore, while we are not constructing a rule solely for capital litigation, we do note that the error in this case resulted in Appellant's vacated death sentence being

---

[12] The terms "disqualification" and "recusal" are closely related. Whereas disqualification refers to the basis for a judge not to be able to sit on a case, "recusal" refers to the judge's refusing to sit on grounds of disqualification. *Compare Black's Law Dictionary* 573 (10th ed. 2014), *with id.* at 1467.

affirmed. It is difficult to conceive of a more striking example of prejudice to an appellant's substantial rights.

## IV. Judgment

The judgment of the United States Air Force Court of Criminal Appeals in *Witt II* is vacated. The case is returned to the Judge Advocate General of the Air Force for remand to an appropriate convening authority for a sentence rehearing in accordance with *Witt I*.