*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
CRISFIELD, HITESMAN, and GASTON,
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Darrius D. UPSHAW**
Hospital Corpsman Third Class (E-4), U.S. Navy
Appellant

**No. 201600053**

Argued: 2 August 2019–Decided: 4 December 2019.

Appeal from the United States Navy-Marine Corps Trial Judiciary. Military Judge: Lieutenant Colonel Mark Sameit, USMC (arraignment) and Lieutenant Colonel Jeffrey Munoz, USMC (motions and trial). Sentence adjudged 28 February 2018 by a general court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of officer and enlisted members. Sentence approved by the convening authority: reduction to pay grade E-1, confinement for 36 months, and a dishonorable discharge.

For Appellant: Lieutenant Clifton E. Morgan III, JAGC, USN.

For Appellee: Lieutenant Timothy Ceder, JAGC, USN (argued); Captain Luke Huisenga, USMC (on brief); Lieutenant Kimberly Rios, JAGC, USN (on brief).

Senior Judge HITESMAN delivered the opinion of the Court, in which Chief Judge CRISFIELD and Judge GASTON joined.

_____

**PUBLISHED OPINION OF THE COURT**

_____

HITESMAN, Senior Judge:

Appellant was convicted, contrary to his pleas, of two specifications of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2012).

Appellant raises three assignments of error (AOE): (1) the instructional error this Court found in Appellant's first trial was not harmless beyond a reasonable doubt, (2) a recused military judge played a substantive role in the case by consulting with the successor military judge on important legal issues in the case, and (3) the successor military judge abused his discretion by not recusing himself after being challenged by the Defense based on his consultation with the recused judge.

AOE 2 and AOE 3 are combined and analyzed together below. We find no prejudice and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case is before us for the second time. At his first trial, Appellant was convicted of two specifications of abusive sexual contact and one specification of sexual assault in violation of Article 120, UCMJ, involving two separate victims. The military judge had instructed the members that they could use proof of the charged assault on Victim 1 to prove Appellant committed the assault against Victim 2, and vice versa. Between Appellant's initial trial and his first appeal, the Court of Appeals for the Armed Forces (CAAF) issued its decision in *United States v. Hills,* holding the use of charged offenses as propensity evidence under Military Rule of Evidence (Mil. R. Evid.) 413 undermines an accused's right to the presumption of innocence and the corresponding propensity instruction is constitutional error. 75 M.J. 350, 357 (C.A.A.F. 2016). This Court applied that ruling to Appellant's case, upheld his conviction of the offenses against Victim 1, set aside his conviction of the offenses against Victim 2, set aside the sentence, remanded the case to the convening authority (CA), and authorized a rehearing. *United States v. Upshaw*, No. 201600053, 2017 CCA LEXIS 363 (N-M. Ct. Crim. App. 31 May 2017) (unpub. op.) (*Upshaw I*). Because Victim 2 subsequently decided not to participate in the rehearing, the CA dismissed the charges pertaining to him and ordered a sentencing rehearing for the convictions involving Victim 1.

The underlying offenses stem from two separate incidents involving two different male Marines. The circumstances surrounding the two allegations

were very similar. Appellant met both victims at the same bar in Oceanside, California. Both victims were very intoxicated by the time Appellant gave them a ride home. Both victims awoke to sexual contact by Appellant, and both displayed visible shock and distress to witnesses who observed them shortly after the assaults. While giving him a ride to his barracks, Appellant unzipped Victim 1's pants and touched his groin and penis without his consent and while he was incapable of consenting due to impairment by alcohol. After giving Victim 2 a ride to Victim 2's apartment, Appellant allegedly penetrated Victim 2's anus with an object without his consent and while he was incapable of consenting due to impairment by alcohol.

During arraignment on the rehearing, before Victim 2 elected not to participate, the trial defense counsel (TDC) challenged the presiding military judge, Judge Sameit, and requested that he recuse himself. The TDC based his challenge on the "risk of undermining public confidence in the judicial process,"[1] since Judge Sameit was the military judge in Appellant's first trial and issued the members' instruction that was found to be erroneous under *Hills*. Judge Sameit did not rule on the challenge against him, but stated that he would issue a written ruling if he remained assigned to the case after discussing the matter with the detailing judge. Judge Munoz was then detailed to the case and Judge Sameit did not issue a ruling.

Although the case ultimately resulted in only a resentencing hearing, the parties engaged in substantive motions practice before Victim 2 declined to participate. Prior to presiding over the motions session, Judge Munoz consulted Judge Sameit regarding the Mil. R. Evid. 413 issue. When asked during TDC voir dire of the military judge, Judge Munoz disclosed this consultation. As a result, the TDC challenged Judge Munoz and moved for him to recuse himself because he had consulted with Judge Sameit regarding the same issue that resulted in the *Hills* error and the remand of Appellant's case. Judge Munoz denied the recusal motion explaining, "[t]he fact that I consulted with a fellow military judge after I had formed my own opinion or conclusion . . . would not cause a reasonable member of the public to believe that I am somehow not impartial."[2]

Additional facts necessary to resolve the AOE's raised are addressed below.

---

[1] Record at 10.

[2] Record at 42.

## II. DISCUSSION

### A. Instructional Error

During Appellant's first appeal, this Court held that the military judge's instruction regarding the use of charged offenses as propensity evidence was erroneous and violated Appellant's constitutional right to the presumption of innocence and his "right to have all findings made clearly beyond a reasonable doubt." *Upshaw I*, 2017 CCA LEXIS 363 at *2, *6 (quoting *Hills*, 75 M.J. at 356) (internal quotation marks omitted). The Court then considered whether the constitutional violation prejudiced Appellant's rights or was harmless beyond a reasonable doubt. *Id.* (citing *Hills*, 75 M.J. at 357). The Court reversed Appellant's conviction for sexually assaulting Victim 2 because the instructional error was not harmless beyond a reasonable doubt. *Id.* at *20–21. However, the Court found that the instructional error was harmless beyond a reasonable doubt regarding the offenses involving Victim 1 because the strength of evidence of Appellant's guilt was "so overwhelming." *Id.* at *16. Specifically, the Court found that despite Victim 1's intoxication, "his memories of the circumstances surrounding the allegation of abusive sexual contact [we]re detailed and largely intact"; there was substantial corroborating evidence supporting Victim 1's testimony; Appellant's decision to stop the car along a highly trafficked road supported Victim 1's assertion that something upsetting occurred on the ride back to his barracks; Appellant's uncorroborated claim that Victim 1 experienced "a severe episode of survivor syndrome suggests the appellant's consciousness of guilt about the need" to stop; and Victim 1's "excited utterances on the phone and via text message [we]re credible evidence of his sudden distress, the sexual nature of what prompted it, and the sense of vulnerability that prompted him to cry for help." *Id.* at *14–15.

Appellant now challenges this Court's holding in *Upshaw I* that the instructional error with regard to Victim 1 was harmless beyond a reasonable doubt. Appellant argues that this Court must set aside Appellant's conviction for the offenses involving Victim 1, relying on *United States v. Williams*, 77 M.J. 459 (C.A.A.F. 2018). Appellant avers that the facts in *Williams* are so analogous that we must reconsider our previous decision. We disagree.

Under the law-of-the-case doctrine, a court should not normally reconsider a decision unless it was "clearly erroneous and would work a manifest injustice." *See United States v. Riley*, 50 M.J. 410, 420 (C.A.A.F. 1999) (Crawford, J., dissenting) (quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988)). In other words, a court's decision on a rule of law should continue to govern the same issues in later stages of the case. *Arizona v. California*, 460 U.S. 605, 618 (1983). While some of the factual and evidentiary circumstances in *Williams* are similar to Appellant's case, the issue is

whether this Court based its previous ruling on factual error or an erroneous view of the law.

The CAAF decided *Williams* after Appellant's trial but before this Court ruled on his first appeal. In *Williams*, the CAAF found that the Mil. R. Evid. 413 propensity evidence instruction error was not harmless beyond a reasonable doubt and reversed the Army Court of Criminal Appeals (ACCA) decision. *Williams*, 77 M.J. at 464. In *Hills,* the CAAF reversed the lower court's decision based on an unconstitutional use of evidence of charged misconduct under Mil. R. Evid. 413 to prove that the appellant had the propensity to commit other charged misconduct. *Id.* at 460 (citing *Hills*, 75 M.J. at 356). This was also the basis for the reversal in Appellant's case for offenses regarding Victim 2. In *Williams*, the CAAF noted flaws in the ACCA's determination that there was an exception to *Hills* when the court could determine that an offense was first proven beyond a reasonable doubt, *then* used as propensity evidence, because the propensity instruction only flowed in one direction. *Williams*, 77 M.J. at 463-64. The CAAF disagreed because it recognized no exceptions to its *Hills* decision, the order in which members address the offenses is not something that can be ascertained, and the erroneous instruction only required that the propensity evidence be proved by a preponderance. *Id.* at 464.

Despite the reversal in *Williams,* the CAAF did not change the law or the standard regarding the use of propensity evidence under Mil. R. Evid. 413 as outlined in *Hills* and applied in Appellant's first appeal. This Court applied the correct standard of law to the facts of Appellant's case and we find that our previous ruling was not "clearly erroneous and would [not] work a manifest injustice." *Riley*, 50 M.J. at 420. While courts have the authority to reconsider their own decisions, we are not persuaded to do so here.

**B. Recusal**

Appellant contends that Judge Munoz should have disqualified himself because he consulted on substantive legal issues in the case with Judge Sameit, who had recused himself. Specifically, Appellant argues that in light of Judge Sameit's recusal and consultation with Judge Munoz, Judge Munoz "should have recused himself and avoided any appearance of conflict." While we find that Judge Munoz believed that Judge Sameit had recused himself and therefore Judge Munoz should not have consulted with him on substantive legal issues in the case, we hold that under the circumstances of this case reversal is not required and Appellant's rights to a fair proceeding were not prejudiced.

We review a military judge's decision not to recuse himself for an abuse of discretion. *United States v. McIlwain*, 66 M.J. 312, 314 (C.A.A.F. 2008) (citing

*United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001)). The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be "'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997)). "An accused has a constitutional right to an impartial judge." *Butcher*, 56 M.J. at 90 (quoting *United States v. Wright*, 52 M.J. 136, 140 (C.A.A.F. 1999)). "There is a strong presumption that a judge is impartial, and a party seeking to demonstrate bias must overcome a high hurdle[.]" *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001). Accordingly, the "moving party has the burden of establishing a reasonable factual basis for disqualification. More than a mere surmise or conjecture is required." *Wilson v. Ouelette*, 34 M.J. 798, 799 (N.M.C.M.R. 1991) (citing *United States v. Allen*, 31 M.J. 572, 601 (N.M.C.M.R. 1990), *aff'd*, 33 M.J. 209 (C.M.A. 1991)).

Disqualification of a military judge may result from either the appearance of bias or actual bias. RULE FOR COURTS-MARTIAL (R.C.M.) 902(a) & (b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.). "The appearance standard is designed to enhance public confidence in the integrity of the judicial system." *Quintanilla*, 56 M.J. at 45 (citing *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988)). "Th[is] rule also serves to reassure the parties as to the fairness of the proceedings[.]" *Id.*

### 1. *Judge Sameit recused himself*

Whether a military judge has acted inconsistent with his recusal is a mixed question of law and fact that we review de novo. *United States v. Roach*, 69 M.J. 17, 19 (C.A.A.F. 2010). In *Roach*, the Chief Judge of the Air Force Court of Criminal Appeals (AFCCA) recused himself from the case and then made a recommendation to the Air Force Judge Advocate General regarding who should replace him on the case. *Id.* at 19. The new AFCCA panel included the recommended replacement judge. AFCCA heard the case and affirmed the lower court's conviction. *Id.* The CAAF reversed the AFCCA decision and provided all military judges with a clearly defined rule: "Once recused, a military judge should not play any procedural or substantive role with regard to the matter about which he is recused." *Id.* at 20. The CAAF reinforced this rule in *United States v. Witt*, finding that appellate judges who were present for duty but elected not to participate in an en banc decision were de facto disqualified from participating in a vote to reconsider and the subsequent rehearing. 75 M.J. 380, 384 (C.A.A.F. 2016). In either case, the CAAF has made it clear that a recused judge is "prohibited from further participation in the case." *Witt*, 75 M.J. at 384. For the purposes of this issue, we find that Judge Sameit was recused and that his consultation with Judge

6

Munoz on substantive legal issues constituted substantive participation in Appellant's case.

At the Art. 39(a), UCMJ, arraignment hearing prior to Appellant's second trial, TDC challenged Judge Sameit "based on the risk of undermining the public confidence in the judicial process" because he presided as the military judge for Appellant's first trial and his instructional error resulted in reversal and remand for a new trial. As we noted above, Judge Sameit's trial instruction to the members regarding propensity evidence was legally correct at the time he gave it, and only the subsequent CAAF decision in *Hills* required the case to be reversed and remanded. Although Judge Sameit did not rule on the challenge against himself as required by R.C.M. 902(d)(1), Judge Munoz was detailed to the remainder of Appellant's case.

During a later Art. 39(a), UCMJ, hearing to argue a Government motion to pre-admit Mil. R. Evid. 413 propensity evidence, Judge Munoz revealed on voir dire that he had consulted with Judge Sameit earlier that morning in preparation for the motion. Specifically, Judge Munoz consulted with Judge Sameit regarding his preliminary conclusions to "see what his thoughts were."[3] Judge Munoz told the parties that he and Judge Sameit shared the same opinion that the Government's proposed propensity evidence was admissible in accordance with Mil. R. Evid. 413 and *Hills*. This issue was closely related to the reason the case was first reversed and remanded by this Court and was the basis for the TDC's challenge against Judge Sameit. When asked about Judge Sameit's recusal, Judge Munoz stated that he believed that Judge Sameit was not required to recuse himself but that he had done so "to remove any possible doubt whatsoever" and "out of an abundance of caution."[4]

While Judge Sameit never ruled on the recusal motion as required by R.C.M. 902(d), Judge Munoz clearly believed Judge Sameit had in fact recused himself, as that is what he relayed to the parties. When the presiding judge informs the parties on the record that the prior judge recused himself, neither they nor this Court need inquire further into that as fact. Whether legally required or merely prudential, such recusal severs that judge from any further procedural or substantive role in the case. *Roach*, 69 M.J. at 20. Whereas *Witt* involved clearly substantive participation and *Roach* involved clearly procedural participation, both types of further participation are prohibited. Here, we find that consultation on the Mil. R. Evid. 413 issue consti-

---

[3] Record at 30.

[4] Record at 34.

tuted substantive participation because it involved an important, then-pending evidentiary issue that was also the basis for challenge against Judge Sameit. Based on the record before us, we find that Judge Sameit was recused and that by consulting on an important evidentiary issue, he continued to participate substantively in Appellant's case.

### 2. Judge Munoz abused his discretion

After conducting extensive voir dire of Judge Munoz regarding his interactions with Judge Sameit and other issues, TDC challenged Judge Munoz, asking him to recuse himself and arguing that in light of Judge Sameit's continued involvement, an objective person would question the impartiality of the court. After clarifying his interactions with Judge Sameit, Judge Munoz relied on R.C.M. 902, *United States v. Quintanilla*, 56 M.J. 37 (C.A.A.F. 2001), and the general propriety of consulting with other judges to deny the defense motion to recuse. The Government contends that Judge Sameit was not required to recuse himself, so there was no legal basis requiring Judge Munoz to recuse himself due to his interaction with Judge Sameit. We disagree.

Judge Munoz clearly stated that Judge Sameit had no "impact on any ruling that [he] may issue in this case," and we do not question the veracity or sincerity of that statement. Judge Munoz also correctly stated the law under *Quintanilla* and R.C.M. 902 regarding the challenge against him as the military judge. However, Judge Munoz explained: "[t]he law is the law is the law, and consulting other military judges about what they think the law is is certainly within the bounds of propriety."[5] This reasoning failed to address the nuance presented by Judge Sameit's recusal prior to their consultation. While we agree as a general matter that military judges can and should consult other military judges, this principle does not extend to substantively consulting military judges regarding cases from which they have been recused. *Roach*, 69 M.J. at 19–20; *Witt*, 75 M.J. at 384. Irrespective of whether Judge Sameit was required to recuse himself, Judge Munoz believed he had done so, and that is precisely what Judge Munoz informed the parties had occurred. Once recused, Judge Sameit was barred from further participation in the case. Therefore, we conclude that Judge Munoz clearly erred in consulting Judge Sameit about substantive legal issues in the case.

Appellant raises only the appearance of impartiality in his appeal. That test under R.C.M. 902(a) is an objective standard concerning whether there

---

[5] Record at 42.

was "[a]ny conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned." *Butcher*, 56 M.J. at 91 (quoting *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982)) (internal quotation marks omitted). While performing this test, we consider the facts and circumstances through an objective lens, "not in the mind of the military judge himself, but 'rather in the mind of a reasonable [person] . . . who has knowledge of all the facts'" at the time of the military judge's decision. *Wright*, 52 M.J. at 141 (quoting *United States v. Sherrod*, 22 M.J. 917, 920 (A.C.M.R. 1986). Based on our review of the record and in light of the interaction between Judge Sameit and Judge Munoz, we find that at the time of Judge Munoz's ruling, reasonable observers, aware of the facts and circumstances surrounding the challenge against and subsequent recusal of Judge Sameit, could reasonably question the military judge's impartiality. Accordingly, in light of *Roach*, we hold that Judge Munoz abused his discretion in denying Appellant's recusal motion.

### 3. No prejudice occurred

Finally, we must look at whether prejudice has occurred. *See Butcher*, 56 M.J. at 92; *Roach*, 69 M.J. at 20. To determine prejudice and whether relief is warranted, we look to the *Liljeberg* factors established by the Supreme Court and relied upon in *Witt*. 75 M.J. at 384 (citing *Liljeberg v. Health Services Acquisition Corps.*, 486 U.S. 847, 862, 864 (1988)). The *Liljeberg* factors are: (1) the risk of injustice to the parties in the particular case; (2) the risk that the denial of relief will produce injustice in other cases; and (3) the risk of undermining the public's confidence in the judicial process. 486 U.S. at 862, 864; *Witt*, 75 M.J. at 384.

Regarding the first *Liljeberg* factor, we find Appellant suffered no injustice in this case. After the recusal issue arose but prior to Appellant's rehearing, Victim 2 decided not to participate in the retrial for the charged offenses against him. As a result, the CA ordered a sentence rehearing only for Appellant's offenses against Victim 1, which this Court had affirmed in *Upshaw I*. Therefore, the Mil. R. Evid. 413 propensity issue that Judge Sameit and Judge Munoz discussed regarding Appellant's second trial was rendered moot. Additionally, Appellant was resentenced by members, further negating any possible taint by either military judge on the proceeding. *See Butcher*, 56 M.J. at 92. Appellant does not allege, and we do not find, any additional errors committed by Judge Munoz in connection with the sentence rehearing. Accordingly, we find that Appellant suffered no injustice.

Likewise, regarding the second *Liljeberg* factor, we find that denying Appellant relief will not produce injustice in any other cases. We reach this conclusion in the context of the case as a whole, including the circumstances of the prior judge's recusal, and cognizant of the military trial judges' general

sensitivity to the kind of issue posed in this case. *See Butcher*, 56 M.J. at 93. In this case, "[i]t is not necessary to reverse the results of the present trial in order to ensure that military judges exercise the appropriate degree of discretion in the future." *Id.*

The third *Liljeberg* factor is at issue in this case and considers the public's confidence in the military judicial process. "A military judge who acts inconsistently with a recusal, no matter how minimally, may leave a wider audience to wonder whether the military judge lacks the same rigor when applying the law." *Roach,* 69 M.J. at 21. In a military justice system where military judges are also military officers, "it is all the more important for participants to engage in their assigned duties without blurring legal and ethical lines; however well intentioned." *Id.* Unlike our analysis of the challenge against the military judge at a specific point in the trial, we "review the entire proceeding" when considering the third *Liljeberg* factor. *United States v. Martinez*, 70 M.J. 154, 160 (C.A.A.F. 2011). While we acknowledge the precedent set in *Roach* and *Witt*, the facts of this case do not pose a significant "risk of undermining the public's confidence in the judicial process." *Witt*, 75 M.J. at 384 (citing *Liljeberg*, 486 U.S. at 864). Judge Munoz's ruling occurred while charges were still pending rehearing regarding Victim 2. After Victim 2 decided not to participate in the rehearing, the CA withdrew the charges pertaining to him and ordered a resentencing hearing only for the remaining findings of guilty regarding Victim 1, as affirmed by this Court. That mooted the Mil. R. Evid. 413 propensity evidence issue giving rise to the challenge against both Judge Munoz and Judge Sameit, and Appellant then opted for members to determine his sentence. Finally, Judge Munoz issued limited rulings and sentencing instructions in connection with the sentencing proceedings, and no other allegations of error or bias are raised. *See Butcher*, 56 M.J. at 92-93. Accordingly, we conclude that reasonable public observers, when taking into account the entirety of these court-martial proceedings, would have full confidence in the military judicial process.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact and no error materially prejudicial to Appellant's substantial rights occurred. Arts. 59, 66, UCMJ. The findings and sentence are **AFFIRMED**.

Chief Judge CRISFIELD and Judge GASTON concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court