# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
PENLAND, MORRIS, and ARGUELLES[1]
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist TAYRON D. DAVIS**
**United States Army, Appellant**

ARMY 20220272

Headquarters, 21st Theater Sustainment Command
Charles L. Pritchard, Jr., Military Judge (arraignment)
Thomas P. Hynes, Military Judge (trial)
Colonel Tony Y. Kim, Staff Judge Advocate

For Appellant: Major Bryan A. Osterhage, JA (argued); Major Bryan A. Osterhage, JA; Jonathan F. Potter, Esquire (on brief); Colonel Philip M. Staten, JA; Jonathan F. Potter, Esquire; Major Bryan A. Osterhage, JA (on reply brief).

For Appellee: Captain Stewart A. Miller, JA (argued); Colonel Christopher B. Burgess, JA; Major Chase C. Cleveland, JA; Captain Stewart A. Miller, JA (on brief).

27 March 2024

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

PENLAND, Senior Judge:

The interests of impartial justice prevail over concerns about docket delay. Where a supervisory judge details a non-impartial judge in order to obtain a particular result and avoid interlocutory appellate review, reasonable doubt emerges about the trial's fundamental fairness, and we grant relief.

---

[1] Judge ARGUELLES decided this case while on active duty.

A military judge, sitting alone as a general court-martial, convicted appellant, contrary to his pleas, of two specifications of sexual assault in violation of Article 120, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920. The military judge sentenced appellant to a dishonorable discharge and 120 days of confinement.

We review the case under Article 66, UCMJ. Appellant raises one assignment of error, which merits discussion and relief.[2]

## BACKGROUND

For context, it is necessary to briefly mention a previous case. In *United States v. Dial*, Colonel (Judge) Charles Pritchard, Chief Judge of the Army's 5th Judicial Circuit, granted a defense motion for a unanimous verdict. The government petitioned this court for extraordinary relief, and we stayed the case to consider it.[3]

In this case, we responded to appellant's motion for appellate discovery by ordering affidavits from Judge Pritchard and Lieutenant Colonel Thomas Hynes, who ultimately presided at trial.

In his affidavit, Judge Pritchard wrote that he anticipated he would continue to receive similar unanimous verdict motions from other accused soldiers appearing before him while *Dial* was stayed. While not certain, Judge Pritchard anticipated he would make similar decisions in future panel cases, including appellant's, depending on appellate review of his previous rulings. Judge Pritchard was concerned about prospective appellate stays in future cases and their effect on the circuit's docket.

Based on this concern, Judge Pritchard removed himself from future panel cases, at least until after interlocutory appellate review in *Dial*. As discussed in greater detail below, this "removal" was the functional equivalent of a recusal under Rule for Court Martial [R.C.M.] 902.

---

[2] We have fully and fairly considered appellant's remaining matter under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Our disposition renders it moot, but we do harbor concern that an impartial observer could reasonably conclude that the interests of speed improperly influenced the military judge to deny appellant's motion for expert assistance. *See also United States v. Kornickey*, ARMY 20210636, 2023 CCA LEXIS 336 (Army Ct. Crim. App. 31 July 2023) (mem. op.); *United States v. Gunkle*, 55 M.J. 26, 31 (C.A.A.F. 2001).

[3] We ultimately granted the government's petition. *United States v. Pritchard*, 82 M.J. 686 (Army Ct. Crim. App. 2022), pet. denied, 82 M.J. 446 (C.A.A.F. 2022).

Judge Hynes had previously offered to preside in this case, and Judge Pritchard detailed him on 4 April 2022. According to Judge Pritchard; "Because Judge Hynes was in his first year on the bench, was eager to gain experience, and his docket had not been busy, he routinely offered to take cases from me." In his affidavit, Judge Hynes wrote:

> At some point in March or April 2022 I asked to be detailed to *U.S. v. Davis* in Kaiserslautern. On 4 April 2022 I was formally detailed to the case. In an earlier discussion with the Chief Circuit Judge we talked about the *U.S. v. Dial* ruling and the potential for a case backlog in the 5th Circuit related to the automatic stay provision in R.C.M. 908(b)(4) while *U.S. v. Dial* was pending appeal. I asked to take *U.S. v. Davis* to do my part to mitigate any potential case backlog while *U.S. v. Dial* was pending appeal.[4]

Judge Pritchard also told Judge Hynes that, depending on appellate review in *Dial*, among other things, he:

> [M]ight or might not take the case back from him. This was not an indication to him that he should rule on any motion in any particular manner; rather, it reflected my trigger for presiding over non-bench trials again....When my Clerk of Court informed me later that SPC Davis had elected a judge-alone trial, I did not take the case back.[5]

On 11 April 2022, Judge Hynes announced he was the presiding judge in an Article 39a session:

> I...have replaced Colonel Jack Pritchard, who was the Military Judge at the arraignment on 14 February 2022. I've been properly certified and sworn, and detailed to this court-martial by Colonel Pritchard. I'm not aware of any matter that might be a ground for challenge against me.

---

[4] Government appellate counsel filed subsequent affidavit-based motions; we will briefly address them later in this decision.

[5] Judge Pritchard could not have "take[n] the case back" after his recusal and resultant disqualification. In any event, the military judge is generally not fungible after assembly, which usually occurs immediately after approving a request for trial by judge alone; good cause must justify replacement. And even then, the "replacement" judge may only hold a bench trial after an accused waives his right to a panel in order to be tried by that particular military judge sitting alone.

On the same day he made his initial appearance, Judge Hynes orally denied appellant's motion for unanimous verdict, following up with a written ruling on 14 April 2022. He also denied appellant's motion for expert assistance. The next month, he accepted appellant's waiver of his right to trial by members, approved his request to be tried by military judge alone, and went to trial.

On 13 April 2022, counsel in another case emailed Judge Pritchard, asking for an opportunity to speak with him about "how judges are detailed to cases in the circuit." The counsel copied appellant's defense counsel, cited five other cases in which the detailed judge had changed (including appellant's), and suggested a single interview with Judge Pritchard for efficiency's sake. Judge Pritchard responded on 14 April 2022, "Consistent with RCM 505(e)(1), I do not intend to discuss my pre-assembly detailing decisions."

On direct appeal, appellate defense counsel emailed Colonel Tyesha Smith, the Army's Chief Trial Judge, asking about the change in military judges:

> Our concern is whether COL Pritchard's removal in United States v. Davis and United States v. Coley was due to his decision to rule favorably for the accused in United States v. Dial. If that was the case, it may have relevance to our clients' respective appeals.
>
> Consequently, we are attempting to understand the reason(s) for COL Pritchard's removal. Our understanding is that this occurred in other cases as well, and we are aware that COL Pritchard specifically declined to provide reasons for his departure in all of these cases. The docket does not show any logistical conflict....

Colonel Smith responded:

> COL Pritchard was not removed from either Davis or Coley, nor am I aware of any case that COL Pritchard has ever been removed from in the nine years that he has been a military judge. For our process to work and for the accused to receive a fair trial, judges must be (and are) independent and free from external influences, to include any influence from the Chief Trial Judge. COL Pritchard would absolutely <u>never</u> be removed from a case for a decision that he made and believed to be right. I concur in COL Pritchard's declination and also decline to speak with you further on this matter.[6]

---

[6] Judge Pritchard wrote in his affidavit: "Before making that decision [recusal], I sought the advice of the Chief Trial Judge, Colonel Tyesha Smith, and we discussed the positive and negative aspects of such a decision on the phone. Colonel Smith

(continued . . .)

4

As we indicated above, the government filed two subsequent motions regarding affidavits. Considering the unique circumstances, they warrant discussion. Nearly two weeks after oral argument on 25 January 2024, the government moved this court to order a "clarifying affidavit" from Judge Hynes. According to the government, the catalysts for this motion were the parties' briefs, appellant's appellate affidavit regarding forum selection, and matters covered in oral argument. We denied the motion.

Notwithstanding our denial of the government's request for a "clarifying affidavit," on 15 February 2024, the government filed a motion to attach a 13 February 2024 affidavit from Judge Hynes, "providing clarification to the statements offered in his 6 June 2023 affidavit." According to the motion, "Following this Court's denial, undersigned counsel contacted Judge Hynes, and asked if he would like to voluntarily provide an additional affidavit to clarify his initial affidavit. On 13 February, Judge Hynes provided the attached affidavit." (Motion to Attach Government Appellate Exhibit 6, 3-4)[7]

Appellant responded on 22 February 2024, opposing attachment and emphasizing, among other things, its ex parte nature. However, appellant did write, "To the extent this court believes it is necessary to grant the government's motion to do so, then it should grant the government's motion, despite the government's failure to show good cause." The government did not reply. We granted the motion on 4 March 2024.

## LAW

### 1. Due Process

"No person shall be...deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V. From this founding principle, an accused has a constitutional right to an "unbiased and impartial" judge, and a military accused has an additional "military due process right to a judge who appears fair and impartial."

---

(. . . continued)
did not express or intimate that I should pursue any specific course of action, and she explicitly said the decision was entirely mine."

[7] The motion also included, "Rather than speculate as to what Judge Hynes meant in his affidavit, this court should order another affidavit to allow him to clarify his previous statement." We interpret this as a scrivener's erroneous holdover from the first motion, for it is otherwise obvious the government had already obtained another affidavit from Judge Hynes.

*United States v. Cooper*, 51 M.J. 247, 249-250 (C.A.A.F. 1999) (citing *Tumey v. Ohio*, 273 U.S. 510 523-35 (1927); *United States v. Ramos*, 42 M.J. 392, 396 (C.A.A.F. 1995); *United States v. Reynolds*, 24 M.J. 261, 264 (C.M.A. 1987).

"There is a strong presumption that a judge is impartial, and a party seeking to demonstrate bias must overcome a high hurdle, particularly when the alleged bias involves actions taken in conjunction with judicial proceedings." *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001)

### 2. *Judicial Duty and Disqualification*

Army judges shall disqualify themselves when required by Rule for Courts-Martial [R.C.M.] 902 or other provision of law. Code of Judicial Conduct for Army Trial and Appellate Judges (16 May 2008). "Although a judge has a duty not to sit when disqualified, the judge has an equal duty to sit on a case when not disqualified." *United States v. Witt*, 75 M.J. 380, 383 (C.A.A.F. 2016) (citing *Laird v. Tatum*, 409 U.S. 824, 837 (1972). "The refusal of a judge who is present for duty and not disqualified to participate amounts to disqualification." *Witt*, 75 M.J. at 384 (citing *United States v. Roach*, 69 M.J. 17, 20 (C.A.A.F. 2010). "Once disqualified, the judge is prohibited from further participation in the case." *Id*.

"A recusal means a judge may not preside over any subsequent proceedings in the case or perform any other judicial actions with respect to it." *Roach*, 69 M.J. at 19 (citation omitted). "When a judge is recused, the judge should not take action to influence the appointment of his or her replacement." *Walker*, 60 M.J. at 358.

A military judge has a "fundamental responsibility to ensure that the record of trial set[s] forth a complete account of the out-of-court events bearing upon [their] actions and the issue of judicial impartiality." *United States v. Quintanilla*, 56 MJ 37, 77 (C.A.A.F. 2001).

A ground for disqualification may be waived, if the waiver is preceded by a full disclosure on the record of the basis for the disqualification. R.C.M. 902(e). On the other hand, as we have previously held, no waiver exists where the military judge does not disclose the basis for his disqualification. *United States v. Springer*, 79 M.J. 756, 759 (Army Ct. Crim. App. 2020). We review waiver questions de novo. *United States v. Black*, 80 M.J. 570, 574 (Army Ct. Crim. App. 2020) (citing *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020)).

A judge should act at all times in a manner that promotes public confidence in the impartiality of the judiciary. Guide to Judiciary Policy, Ch. 2: Code of Conduct for United States Judges (12 March 2019). A judge should not initiate, permit, or consider ex parte communications concerning pending or impending matters. *Id*.

### 3. Prejudice

The Court of Appeals for the Armed Forces [C.A.A.F.] has held that "structural error," which affects "the framework within which the trial proceeds, rather than simply an error in the trial process itself," requires mandatory reversal. *United States v. Upham*, 66 M.J. 83, 86 (C.A.A.F. 2008) (citing *Arizona v. Fulmante*, 499 U.S. 279, 310 (1991)).

For non-structural errors, "[w]here a forfeited constitutional error was clear and obvious, "material prejudice" is assessed using the "harmless beyond a reasonable doubt standard set out in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)." *United States v. Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F. 2019).[8] The standard is met where a court is confident that there was no reasonable possibility that the error might have contributed to the conviction." *Id.* (citing *Chapman*, 386 U.S. at 24). Just as the government bears the burden to disprove prejudice in the event of forfeited constitutional error, it similarly bears this burden in the event of constitutional error that is neither forfeited nor waived. *Id.* at 462 (citing *Chapman*, 386 U.S. at 24).

Even absent material prejudice, we are still required to determine if reversal is warranted under circumstances pertaining to the public's confidence in the military justice system, using the three-part test from *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988). *United States v. Martinez*, 70 M.J. 154, 159 (C.A.A.F. 2011). In *Liljeberg*, the Supreme Court recognized that the purpose of the civilian counterpart to R.C.M. 902(a) is to promote confidence in the judicial system. *Id.* (citing *Liljeberg*, 486 U.S. at 860). *Liljeberg* states "it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Id.*

## ANALYSIS

We first emphasize what this case is *not* about. Try as the government might in its brief and at oral argument, it cannot reframe it as one where appellant is somehow continuing to futilely argue that he is entitled to a unanimous verdict. That is a red herring, for appellant has not raised that issue before this court. Likewise, because appellant did not know about the undisclosed judicial activity, the government's waiver argument lacks merit. *See Springer*, 79 M.J. 756 at 759.

---

[8] We apply this standard and burden but decline to find forfeiture, because appellant did not know about the error until long after trial.

The dispositive issue is appellant's right to an impartial judge. We start our analysis by determining whether the error at issue is structural or non-structural. While we recognize one might reasonably see this as unknown error (to the parties at trial), if we find the alleged error to be non-structural, we will follow our precedent in *Springer* and review this case under the plain error standard of review. *Springer*, 79 M.J. at 759-60 (holding that even when a military judge fails to disclose the reasons requiring his recusal or disqualification, we analyze the facts to determine if there was plain error in that the error materially prejudiced the substantial rights of the appellant pursuant to Article 59(a), UCMJ).

Rule for Court Martial 902(a) provides that a military judge shall disqualify himself or herself "in any proceeding in which the military judge's impartiality might reasonably be questioned." Rule for Court Martial 902(b) sets forth a non-exclusive list of mandatory disqualifications to include personal bias or knowledge, prior specified involvement, or the potential to be called a witness. In this case, we find that Judge Pritchard's stated reason for "removing himself" from this case - that is, his concern about how prospective appellate stays on his unanimous verdict rulings would impact his circuit's docket - does not seem to fit neatly into any of the categories recognized under R.C.M. 902. Nevertheless, whether he termed it as a "removal" or a "recusal," we find that the end result was the same: once he took himself off the case, under R.C.M. 902 Judge Pritchard was disqualified from taking any further action regardless of his stated reason. As such, he clearly erred in detailing the case to Judge Hynes after he made the decision to "remove" himself. *See Roach*, 69 M.J. at 19 ("A recusal means a judge may not preside over any subsequent proceedings in the case or perform any other judicial actions with respect to it."); *Walker*, 60 M.J. at 358 ("When a judge is recused, the judge should not take action to influence the appointment of his or her replacement.").

Moreover, in refusing to answer counsel's questions or otherwise explain his rationale for not hearing this case, Judge Pritchard violated R.C.M. 902(d)(2), which provides that "(e)ach party shall be permitted to question the military judge and to present evidence regarding a possible ground for disqualification before the military judge decides the matter."

We recognize R.C.M. 505(e)(1) allows a Chief Circuit Judge [CCJ] like Judge Pritchard to reassign military judges to courts-martial "without cause shown on the record." And, we realize there are many reasons why a CCJ might change the detailing of military judges, *i.e.*, to manage workload, manage leave schedules, allow reserve judges the opportunity to try cases, etc. But, that is not what happened in this case. In short, a military judge may not recuse himself under

R.C.M. 902 and then cite the provisions of R.C.M. 505 to avoid having to explain that action.[9]

Beyond its ultra vires nature, Judge Pritchard's decision to detail Judge Hynes was also not for a lawful reason; instead, it was in pursuit of a particular result on an anticipated issue in the case. Turning to Judge Hynes, and *assuming his detail was not void ab initio*, he did not approach appellant's case impartially. He volunteered with one stated purpose, "to do my part to mitigate any potential case backlog while *Dial* was pending appeal." We interpret this as a predetermined intent to deny a likely motion in appellant's case, especially given that Judge Hynes confirmed in his affidavit that he made this statement while fully aware of the "*U.S. v. Dial* ruling and the potential for case backlog in the 5th Circuit related to the automatic stay provision in R.C.M. 908(b)(4) while *U.S. v. Dial* was pending appeal." This was antithetical to a judge's required impartiality and warranted disqualification alone, even if Judge Hynes believed he had been properly detailed.

Neither Judge Pritchard, who specifically declined to do so almost two years ago, nor Judge Hynes disclosed these facts during appellant's trial. These nondisclosures fell far short of *Quintanilla*'s admonition that military judges have a "fundamental responsibility to ensure that the record of trial set[s] forth a complete account of the out-of-court events bearing upon [their] actions and the issue of judicial impartiality."

*Roach* found non-structural error, but appellant's case is different in several material respects: neither party has conceded this issue, the trial judge was not detailed in accordance with applicable law, and the trial judge was not impartial. Moreover, these facts present obvious prejudice to our military justice system's credibility: an already-recused judge detailed a non-impartial replacement judge to hear the case because the recused judge expected the replacement judge would likely rule a certain way on an anticipated motion therein and, therefore, avoid possible interlocutory appellate stay; the replacement judge requested to take the case in order to reach a certain result on the anticipated motion and avoid delay; the recused judge failed to explain his reasons for recusal but instead improperly indicated the reassignment was for routine administrative reasons under R.C.M. 505; and neither judge disclosed these facts until we ordered it.

This sub rosa episode violated the 5th Amendment's Due Process clause and raised reasonable doubts about whether appellant got a fair trial. Under the

---

[9] In his affidavit to this Court, Judge Pritchard did not mention his previous declination on the basis of R.C.M. 505, nor did he continue to raise that rule as an impediment.

circumstances, we find structural error mandating reversal, because the improper conduct of both trial judges "affected the framework within which the trial proceed[ed.]"

Alternatively, even if we were to find that the error was non-structural *and* that there was no material prejudice to appellant's rights,[10] for all of the same reasons, we would reach the same result under *Roach* and the third prong of the *Liljberg* test: the risk of undermining the public's confidence in the judicial process.

In *Roach*, the Chief Circuit Judge of the Air Force Criminal Court of Appeals (CCA) commented on the case during two public events. 69 M.J. at 18-19. After appellant moved for recusal of the original panel hearing his case, the Chief Judge recused himself and *then* recommended his replacement to The Judge Advocate General of the Air Force (TJAG). After TJAG favorably acted upon this recommendation, the replacement judge authored the opinion. *Id.* at 19.

The C.A.A.F. first held that although the Chief Judge's actions in recommending his replacement after he recused himself was an "error in recusal," under the circumstances of that case, to include the fact the influence from the Chief Judge's recommendation was minimal and there was no discernible prejudice to appellant, there was no structural error. *Id.* Nevertheless, after analyzing the error under *Liljberg*, the C.A.A.F. vacated the ruling of the lower court affirming appellant's conviction. Notwithstanding the lack of prejudice to appellant from the Chief Judge's conduct in taking action in the case after recusal, the C.A.A.F. squarely held:

> Nonetheless, either a military judge is recused or he is not. A military judge who acts inconsistently with a recusal, no matter how minimally, may leave a wider audience to wonder whether the military judge lacks the same rigor when applying the law.
>
> . . . .
>
> The appearance of impartiality may be especially important in the military justice context. From an outsider's perspective, it might well appear that at a court-martial and at the CCA, the critical players are invariably uniformed officers, usually if not always from the same service, and in many cases drawn from what are relatively small communities of military judge advocates. In this context, it is all the more important for the participants to

---

[10] The government has not disproven prejudice to appellant beyond a reasonable doubt.

engage in their assigned duties without blurring legal and critical lines, however well intentioned.

*Id.* at 21, citing *United States v. Greatting*, 66 M.J. 226, 232 (C.A.A.F. 2008).

While *Roach* dealt with this issue at the appellate level, the same recusal principles apply here. Considering the facts of this case as detailed above are far more egregious, we readily conclude that the risk of undermining the public's confidence in the military judicial process warrants setting aside appellant's convictions and sentence. While we recognize *Quintanilla*'s presumption of judicial impartiality, the circumstances here overcome it.

In most cases, alleged irregularities are limited to circumstances at the trial level; they do not continue on direct appeal. This naturally tends to have a moderating effect on any appropriate relief, and we frequently authorize rehearings in some form. In this case, irregularities persist. While not technically in defiance of our decision not to order a second affidavit from Judge Hynes, government appellate counsel's decisions – first, to obtain the affidavit anyway, and second, to offer it - have not benefitted their case. First, we are troubled by the ex parte exchange between the government and Judge Hynes that resulted in his second affidavit. Moreover, among other things from the second affidavit, we are concerned by Judge Hynes's adversarial tenor, and his solicitous remarks about the defense in this case and the defense function in general.

Notwithstanding the Rule of Judicial Conduct generally prohibiting consideration of ex parte matters, after careful reflection we granted the motion to attach the Supplemental Affidavit of Judge Hynes because its content, nature and circumstances of its submission further support our ultimate determination to dismiss this case with prejudice.

## CONCLUSION

The findings of guilty and the sentence are SET ASIDE. The charges are DISMISSED with prejudice.

Judge MORRIS and Judge ARGUELLES concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court