*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Daytron Abdullah, Sergeant
United States Army, Appellant

**No. 25-0070**
Crim. App. No. 20230223

Argued December 9, 2025—Decided June 12, 2026

Military Judge: Jacqueline L. Emanuel

For Appellant: *Captain Andrew W. Moore* (argued); *Colonel Philip M. Staten, Lieutenant Colonel Autumn R. Porter*, and *Jonathan F. Potter*, Esq. (on brief); *Lieutenant Colonel William M. Grady* and *Lieutenant Colonel Robert D. Luyties*.

For Appellee: *Captain Meghan E. Moore* (argued); *Colonel Richard E. Gorini, Major Vy T. Nguyen*, and *Captain Andrew T. Bobowski* (on brief); *Major Marc B. Sawyer* and *Captain Anthony J. Scarpati*.

Judge JOHNSON delivered the opinion of the Court, in which Judge SPARKS and Senior Judge EFFRON joined. Chief Judge OHLSON filed a separate opinion concurring in the judgment, in which Judge HARDY joined. Judge HARDY filed a separate opinion concurring in the judgment.

————————

Judge JOHNSON delivered the opinion of the Court.

A military judge sitting as a special court-martial convicted Appellant, pursuant to his pleas, of one specification each of desertion, absence without leave, willfully disobeying a superior commissioned officer, and wrongful use of a controlled substance, in violation of Articles 85, 86, 90, and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 885, 886, 890, 912a (2018). The military judge sentenced Appellant to a reduction to E-1, confinement for a total of ninety days, and a bad-conduct discharge (BCD). The United States Army Court of Criminal Appeals (CCA) affirmed the findings and affirmed so much of the sentence as included ninety days of confinement. *United States v. Abdullah* (*Abdullah I*), No. ARMY 20230223, 2024 CCA LEXIS 199, at *12, 2024 WL 2045391, at *5 (A. Ct. Crim. App. Apr. 30, 2024) (unpublished). On reconsideration, the en banc CCA affirmed the findings and affirmed the sentence as adjudged. *United States v. Abdullah* (*Abdullah II*), 85 M.J. 501, 510 (A. Ct. Crim. App. 2024).

We granted review to determine whether a retired appellate judge and an appellate judge on terminal leave impermissibly participated in the en banc decision of the CCA. For the reasons stated below, we hold that under the circumstances of this case, the retired appellate judge's participation in the decision was impermissible, and this error requires remand for a new Article 66, UCMJ, 10 U.S.C. § 866 (Supp. III 2019-2022), review. Accordingly, we set aside the decision of the CCA. We reserve for another day the question whether the participation of a former appellate judge on terminal leave was permissible.

## I. Background

In a memorandum opinion issued on April 30, 2024, the CCA held that dilatory post-trial processing violated due process and warranted relief under Article 66, UCMJ. *Abdullah I*, 2024 CCA LEXIS 199, at *12, 2024 WL 2045391, at *5. The court affirmed the findings of guilty but affirmed only so much of the sentence as included ninety days of confinement. *Id.,* 2024 WL 2045391, at *5. The Government

filed a suggestion for reconsideration en banc, which the CCA adopted on June 14, 2024, thereby vacating its opinion in *Abdullah I. See* Army Court of Criminal Appeals Rules of Appellate Procedure Rule 31.2(c) (Jan. 15, 2019) ("An order granting reconsideration vacates the decision to be reconsidered.").

In an opinion on reconsideration issued on November 5, 2024, the en banc CCA held that there was no unreasonable post-trial delay in violation of due process or Article 66, UCMJ, and that setting aside the BCD was not appropriate relief under Article 66(d)(2), UCMJ. *Abdullah II*, 85 M.J. at 510. Accordingly, it affirmed the original findings and sentence. *Id.* Senior Judge Walker authored the opinion of the eight-judge court, in which Chief Judge Smawley and three other judges concurred. *Id.* at 503, 510. In a footnote, the CCA noted that "Chief Judge SMAWLEY took final action on this case prior to his departure from the court," while "Senior Judge WALKER took final action in this case prior to her retirement." *Id.* at 503 n.1. Three judges wrote separately, one concurring in part and in the judgment, *id.* at 510 (Morris, J., concurring in part), and two dissenting. *Id.* at 511 (Arguelles, J., dissenting), 514 (Penland, J., with whom Arguelles, J., joined, dissenting).

Appellant petitioned this Court for review of the question whether the CCA lawfully conducted its en banc review of his case where former Senior Judge Walker and former Chief Judge Smawley were not in regular active service when *Abdullah II* was issued.[1] Attached to the Supplement to the Petition for Grant of Review were two memoranda concerning the composition of Army CCA panels. The first, dated July 22, 2024, identifies Colonel Pond as Chief Judge and reflects that Senior Judge Walker was assigned to CCA Panel 4 as of that date. Former Chief Judge

---

[1] Appellant also argued the decision to grant en banc review was itself an abuse of discretion and challenged the CCA's ruling that post-trial delay did not violate his due process rights. We denied review of these assertions of error, which are not at issue on this appeal.

Smawley was not assigned to any panel. The second, dated September 30, 2024, and effective September 23, 2024, identifies Colonel Pond as Chief Judge and reflects that neither former Chief Judge Smawley nor former Senior Judge Walker was assigned to a panel. Both memoranda state that the panel reorganization did not affect this case. Appellant subsequently filed a motion requesting that this Court take judicial notice of the panel composition memos attached to the Supplement.

Upon consideration of Appellant's Supplement to the Petition for Grant of Review and his request for judicial notice, we concluded there was insufficient evidence to answer the assigned issue. Accordingly, on March 24, 2025, we ordered the Government to file an answer to the Supplement and provide an affidavit answering the following questions:

> 1. For former-Chief Judge Smawley:
>
> (a) On what date did his assignment to the United States Army Court of Criminal Appeals end?
>
> (b) If he retired, on what date did he retire from the United States Army?
>
> (c) If he retired, what date did he begin terminal leave?
>
> 2. For former-Senior Judge Walker:
>
> (a) On what date did she retire?
>
> (b) On what date did she begin terminal leave?

*United States v. Abdullah*, 85 M.J. 406 (C.A.A.F. 2025) (order). The motion for judicial notice was denied as moot. *Id.*

On April 21, 2025, the Government filed an affidavit with this Court providing the following information:

> 1. For former-Chief Judge Smawley:
>
> > (a) Chief Judge Smawley relinquished command on 22 July 2024.
> >
> > (b) Chief Judge Smawley retired from the Army on October 31, 2024.

4

(c) Chief Judge Smawley's transition leave started on September 1, 2024. Chief Judge Smawley completed his uncharged transition absence (transition administrative absence/involuntary separation administrative absence) from August 13, 2024, through August 31, 2024.

2. For former-Senior Judge Walker

(a) Colonel Walker retired on November 30, 2024.

(b) Colonel Walker's terminal/transition leave ran from October 10, 2024, until her retirement. Colonel Walker completed her uncharged transition absence (transition administrative absence/involuntary separation administrative absence) from September 20, 2024 through October 9, 2024.

We then granted review of a modified issue: "Whether a retired appellate judge and an appellate judge on terminal leave impermissibly participated in an en banc decision of the United States Army Court of Criminal Appeals." *United States v. Abdullah*, 86 M.J. 138 (C.A.A.F. 2025) (order granting review).

## II. Standard of Review

Whether a court is properly constituted is a question of law that this Court reviews de novo. *United States v. Janssen*, 73 M.J. 221, 224 (C.A.A.F. 2014).

## III. Discussion

"A complete Article 66, UCMJ, review is a 'substantial right' of an accused." *United States v. Swift*, 76 M.J. 210, 216 (C.A.A.F. 2017) (quoting *United States v. Jenkins*, 60 M.J. 27, 30 (C.A.A.F. 2004)). "Only a properly constituted appellate panel can complete the review required by Article 66, UCMJ." *United States v. Lane*, 64 M.J. 1, 7 (C.A.A.F. 2006). "The consideration of Appellant's case by any properly constituted panel satisfies Article 66, UCMJ." *United States v. Shea*, 76 M.J. 277, 280-81 (C.A.A.F. 2017) (citing *United States v. Vines*, 15 M.J. 247, 249 (C.M.A. 1983) (plurality opinion)). Only a commissioned officer or a

civilian assigned to a CCA as an appellate military judge may sit en banc with a CCA. Article 66(a), UCMJ. Because former Chief Judge Smawley participated in the en banc decision of this case when he was no longer assigned to the CCA as an appellate judge, *Abdullah II* was decided by an improperly constituted court and, thus, the case must be remanded for a review by a properly constituted en banc court.

## A. Applicable Legal Principles

Appellate military judges are assigned to the Courts of Criminal Appeals (CCAs) by the Judge Advocates General (TJAGs) in accordance with qualifications set forth in Article 66(a), UCMJ, 10 U.S.C. § 866(a) (Supp. III 2019-2022), which provides:

> (1) IN GENERAL.— . . . Appellate military judges who are assigned to a Court of Criminal Appeals may be commissioned officers or civilians, each of whom must be a member of a bar of a Federal court or of the highest court of a State and must be certified by the Judge Advocate General as qualified, by reason of education, training, experience, and judicial temperament, for duty as an appellate military judge. . . . In accordance with regulations prescribed by the President, assignments of appellate military judges under this section (article) shall be for appropriate minimum periods, subject to such exceptions as may be authorized in the regulations.

> (2) ADDITIONAL QUALIFICATIONS.— In addition to any other qualifications specified in paragraph (1), any commissioned officer or civilian assigned as an appellate military judge to a Court of Criminal Appeals shall have not fewer than 12 years of experience in the practice of law before such assignment.

Unlike federal judges who are guaranteed lifetime tenure during "good Behaviour," U.S. Const. art. III, § 1, officers assigned as military judges—including those assigned as appellate military judges—serve limited terms and "may perform judicial duties only when assigned to do so by the

appropriate Judge Advocate General." *Weiss v. United States*, 510 U.S. 163, 168 (1994).

Consistent with these limitations, the Code of Judicial Conduct for Army Trial and Appellate Judges applies to officers only "when serving in a judicial assignment or performing judicial functions on active duty." Code of Judicial Conduct for Army Trial and Appellate Judges, I. Applicability of This Code, at 6 (May 16, 2008). "The intent of this Code is to cover only those individuals who have been certified as judges by The Judge Advocate General and are currently performing in a judicial assignment or performing judicial functions." *Id.* at Comment [2].

Article 66(h), UCMJ, affords the Judge Advocates General broad authority to create procedures governing the operations of the service courts. Pursuant to this authority, the Joint Rules of Appellate Procedure for Courts of Criminal Appeals (Jan. 1, 2019, amended through May 17, 2024) [hereinafter Joint Rules or JRAP] provide that "[a] majority of judges who are in regular active service, as defined in [Joint] Rule 7 or CCA rules, and not disqualified may, *sua sponte* or in response to a suggestion, order that an appeal or other proceeding be considered or reconsidered by the Court *en banc*." JRAP 27(a). The Joint Rules further provide that "[w]hen sitting *en banc*, a majority of the judges in regular active service with the [service] Court shall constitute a quorum." JRAP 7(a). The Joint Rules define "regular active service":

> [A] judge assigned to the Court shall be deemed to be in regular active service if: (1) in the active component of the armed forces; (2) in the reserve component of the armed forces and serving on active duty with the Court for a period of more than 30 consecutive days; or (3) a civilian judge who is a full-time employee of the agency from which appointed. . . . [or] when a reserve component military judge who does not meet the above criteria is duly assigned to a matter.

JRAP 7(b).[2] Accordingly, unless assigned to the court, a judge cannot be in regular active service in accordance with JRAP 7(a).

### B. The Error

Former Chief Judge Smawley was not eligible to participate in *Abdullah II* because he was a retired officer not assigned as a CCA judge when the case was decided. "[A] case or controversy is determined when it is decided." *Yovino v. Rizo*, 586 U.S. 181, 185 (2019) (per curiam) (citation modified). *Abdullah II* was decided on November 5, 2024, when the CCA issued its en banc decision. Former Chief Judge Smawley retired on October 31, 2024. There is no evidence in the record that he was assigned to serve as a CCA judge after his retirement. As a retired officer not assigned to the CCA, he was ineligible to participate in the decision in *Abdullah II*.

In *United States v. American-Foreign S.S. Corp.*, the Supreme Court held that a judge who retired after the intermediate appellate court granted a petition for rehearing en banc but before it issued its decision was statutorily barred from participating in the en banc decision. 363 U.S. 685, 691 (1960). The relevant statute provided that en banc proceedings "shall be heard and determined by . . . all active circuit judges of the circuit." 28 U.S.C. § 46(c) (1958). The Supreme Court found that "[t]he literal meaning of the words seems plain enough. An 'active' judge is a judge who has not retired 'from regular active service.'" *American-Foreign S.S. Corp.*, 363 U.S. at 688 (quoting 28 U.S.C. § 371(b) (1958)). Moreover, "[a] case or controversy is 'determined' when it is decided." *Id.* Because the judge in question retired after the court granted the petition for rehearing en banc but before it issued its decision, he was not eligible to participate in the en banc decision. *Id.* at 691.[3]

---

[2] The service courts are authorized to establish their own definitions of "regular active service" even if inconsistent with JRAP 7(b). JRAP 7(c). However, the Army has not done so.

[3] Congress subsequently amended 28 U.S.C. § 46(c) to allow retired federal judges to participate in en banc decisions. Pub. L.

Accordingly, the Supreme Court set aside the lower court's judgment. *Id.*

In the service courts, as in the federal courts, a case is decided when the court's decision is issued. *See, e.g.*, *United States v. Schreck*, 10 M.J. 374, 374 (C.M.A. 1981) (noting that the Court "decided this case" on the date that the lead opinion and two separate opinions in the case issued); *see also United States v. Jeffers*, No. ACM 38664 (recon), 2016 CCA LEXIS 52, at *8, 2016 WL 381592, at *3 (A.F. Ct. Crim. App. Jan. 28, 2016) (holding that "cases provide precedential (or persuasive) value when decided and issued, regardless of their inchoate nature" pending appeal). Joint Rule 7 requires the participation of the assigned judges until "final resolution" of the matter before the court. JRAP 7(a) (providing that "concurrence of a majority . . . shall be required for a final resolution of any matter before the panel or Court *en banc*"). "Final resolution" is synonymous with "heard and determined," the statutory language at issue in *American-Foreign S.S. Corp.*, 363 U.S. at 688. *Compare Resolution, Black's Law Dictionary* (12th ed. 2024) ("[a] court's solemn judgment or decision"), *with Heard and Determined, Black's Law Dictionary* (12th ed. 2024) ("having been presented to a court that rendered judgment"). Therefore, a case is finally resolved when a decision is issued. The CCA's November 5, 2024, decision in *Abdullah II* was its final resolution of the case.

---

No. 88-176, 77 Stat. 331 (1963). In its current form, 28 U.S.C. § 46(c) provides:

> that any senior circuit judge of the circuit shall be eligible (1) to participate, at his election and upon designation and assignment pursuant to section 294(c) of this title and the rules of the circuit, as a member of an in banc court reviewing a decision of a panel of which such judge was a member, or (2) to continue to participate in the decision of a case or controversy that was heard or reheard by the court in banc at a time when such judge was in regular active service.

Here, like the judge in *American-Foreign S.S. Corp.*, former Chief Judge Smawley retired after the intermediate appellate court granted the petition for rehearing en banc but before *Abdullah II* was decided. Because he was a retired officer not assigned to the CCA when the case was decided, former Chief Judge Smawley was not eligible to participate in the en banc decision of the court. *See* JRAP 7(a), (b); *cf. United States v. Witt*, 75 M.J. 380, 383 (C.A.A.F. 2016) (noting that an appellate judge "has a duty not to sit when disqualified" equal to the judge's "duty to sit on a case when not disqualified"); *see also United States v. Roach*, 69 M.J. 17, 19-20 (C.A.A.F. 2010) ("A recusal means the judge 'may not preside over any subsequent proceedings in the case or perform any other judicial actions with respect to it.'" (quoting Richard E. Flamm, *Judicial Disqualification: Recusal and Disqualification of Judges* § 22.1 (1996))).

This is true even if the opinion was written and former Chief Judge Smawley had cast his final vote before retiring. The Government has cited, and we have found, no "rule or decision . . . that renders judges' votes and opinions immutable at some point in time prior to their public release. And it is generally understood that a judge may change his or her position up to the very moment when a decision is released." *Yovino*, 586 U.S. at 184.

In *Yovino*, the Supreme Court vacated an en banc decision authored by a United States Court of Appeals for the Ninth Circuit judge who passed away eleven days before the decision was issued. *Id.* at 183. A footnote to the en banc decision noted that before his death, the judge "fully participated in this case and authored this opinion. The majority opinion and all concurrences were final, and voting was completed by the en banc court prior to his death." *Id.* at 184 (citation omitted) (internal quotation marks omitted). Nevertheless, the Supreme Court held:

> Our holding in *American-Foreign S.S. Corp.* applies with equal if not greater force here. When the Ninth Circuit issued its opinion in this case, [the deceased judge] was neither an active judge nor a senior judge. For that reason, by statute he

> was without power to participate in the en banc
> court's decision at the time it was rendered.

*Id.* at 185. The same is true here. Even assuming former Chief Judge Smawley was assigned as a CCA judge during the pendency of the appeal, to include the drafting and final voting on the decision, he was a retired officer not assigned as a CCA judge when the CCA issued its decision. Therefore, he was not eligible to participate in *Abdullah II* at the time the decision was rendered.[4]

Nothing prohibits the service secretaries from ordering to active duty a retired member of the regular service for assignment to a service court, *see* 10 U.S.C. § 688(a) (providing that a retired member of the regular Army may be ordered to active duty by the Secretary of the Army at any time), nor is the President prohibited from appointing a civilian to serve as an appellate military judge, *see Janssen*, 73 M.J. at 225 (holding that the appointment of a civilian as a military appellate judge can only be done by the President with the advice and consent of the Senate).

---

[4] With respect to the termination of former Chief Judge Smawley's assignment to the CCA, the order issued by our Court discussed *supra* p. 4, asked the Government: "On what date did his assignment to the United States Army Court of Criminal Appeals end?" The Government's response—"Chief Judge Smawley relinquished command on 22 July 2024"—did not address the termination of his assignment to the CCA, but instead addressed a different matter, the conclusion of his command responsibilities at the CCA. The second question in the order issued by our Court asked the Government: "If he retired, on what date did he retire from the United States Army?" The Government's response to the second question stated: "Chief Judge Smawley retired from the Army on October 31, 2024." During oral argument the Government identified October 31, 2024—the retirement date for former Chief Judge Smawley—as the end date of his assignment to the Court of Criminal Appeals. After noting that former Chief Judge Smawley could have returned to the CCA after he retired on October 31, 2024, the Government conceded that the record did not contain evidence that former Chief Judge Smawley had received an order assigning him to serve as a military appellate judge on the CCA after he retired on October 31, 2024.

But even if former Chief Judge Smawley *could* have been assigned to the CCA after he retired, there is no evidence that he *was* either recalled to active duty or appointed by the President as a military appellate judge after he retired and before this case was decided.

### C. The Remedy

In light of the participation of a retired officer not assigned as a CCA judge, we set aside the decision in *Abdullah II* and remand for further proceedings. *See Ryder v. United States*, 515 U.S. 177, 188 (1995) (declining to test for prejudice and holding a servicemember is entitled to a hearing before a properly appointed panel of the Court of Military Review, the predecessor to the CCA).

In *Lane*, we held that the participation of a United States Air Force Standby Reserve officer as an appellate military judge on a CCA panel that decided the appellant's case violated the Incompatibility Clause of the Constitution where the military judge was also a sitting United States Senator. 64 M.J. at 7. Although his vote was immaterial to the result because the panel was unanimous, and the case was submitted on its merits to the CCA without assignment of error, *United States v. Lane*, 60 M.J. 781, 782 (A.F. Ct. Crim. App. 2004) (per curiam), we held that "[o]nly a properly constituted appellate panel can complete the review required by Article 66, UCMJ," *Lane*, 64 M.J. at 7. Accordingly, we vacated the decision and remanded for consideration by a properly constituted panel. *Id.*

*Lane* is consistent with federal precedent vacating the opinion of an improperly constituted panel and remanding even if the disqualified judges' presence did not materially impact the result. The Supreme Court "has never doubted its power to vacate the judgment entered by an improperly constituted court of appeals, even when there was a quorum of judges competent to consider the appeal." *Nguyen v. United States*, 539 U.S. 69, 82 (2003) (citing cases). Federal circuit courts of appeals have applied the same remedy, vacating decisions in which a judge erroneously participated. *See Mayor of Baltimore v. Mathews*, 571 F.2d

1273, 1276 (4th Cir. 1978) (per curiam) (withdrawing previous opinion where a judge had died prior to the case being decided and affirming the lower court on an equally divided vote); *see also Altera Corp. v. Commissioner*, 898 F.3d 1266, 1266 (9th Cir. 2018) (withdrawing opinions sua sponte after a participating judge passed away).

We recognize that the erroneous participation of a judge in an en banc decision does not always require remand. For example, in *Vines*, we found error and acknowledged that remand was an option where the appellant's case was assigned to one lower court panel but decided by a different panel. 15 M.J. at 250. However, because one of the members of the assigned panel had retired and was unavailable, remand would not have resulted in review by the assigned panel. *Id.* Moreover, "[t]he accused [did] not challenge the qualifications of the appellate military judges who reviewed and decided his case, and there is nothing in the record before us which could support such a challenge." *Id.* at 249. In other words, there was no question the deciding panel was properly constituted; the lower court simply sent the case to the wrong panel. We concluded "the only practical solution is to affirm the decision of the panel which did consider the accused's case since there is no codal impediment to such action." *Id.* at 250.

But where the CCA acts outside the scope of its authority—in this case, by including a person not assigned as a CCA judge in the en banc decision of the court—we do not require a showing of prejudice to justify a remand for a new Article 66, UCMJ, review. *See United States v. Nerad*, 69 M.J. 138, 140 (C.A.A.F. 2010) (remanding for a new Article 66, UCMJ, review without requiring a showing of prejudice where, inter alia, "it is unclear from the CCA's opinion whether it exceeded its authority by disapproving a finding with reference to something other than a legal standard"). In contrast with *Vines*, the en banc court here was improperly constituted by virtue of former Chief Judge Smawley's continued participation when he was no longer assigned to the CCA. And unlike *Vines*, remand of this case would afford Appellant his statutory right to an Article 66, UCMJ,

review by a properly constituted court. Therefore, we conclude the case should be remanded for further proceedings before a properly constituted en banc court.

Even if it is necessary to find prejudice to provide Appellant with a remedy, we still conclude that remand is appropriate because the CCA's failure to ensure Appellant's case was decided by a properly constituted en banc court prejudiced Appellant's substantial rights. In *Liljeberg v. Health Services Acquisition Corp.*, the Supreme Court set forth a three-factor test for evaluating the prejudicial effect of errors involving the participation of disqualified judges in a case: "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." 486 U.S. 847, 864 (1988); *see also United States v. Gonzalez*, 79 M.J. 466, 470 (C.A.A.F. 2020) (Maggs, J., with whom Ryan, J., joined, dissenting) (recognizing that "[n]ot all errors in conducting a review under Article 66(c), UCMJ, are prejudicial" (citing cases where the Court found errors in the CCAs' Article 66 review harmless)).

"Because not every judicial disqualification requires reversal," this Court has "adopted the standards announced by the Supreme Court in *Liljeberg* to determine whether a military judge's conduct warrants that remedy to vindicate public confidence in the military justice system." *United States v. Martinez*, 70 M.J. 154, 158 (C.A.A.F. 2011). We apply the same standards to evaluate the conduct of appellate military judges. *Witt*, 75 M.J. at 384 ("Although CCA judges are not 'judges of the United States,' we have applied the *Liljeberg* factors in evaluating the participation of recused judges in the military justice system."). As we have explained, the third *Liljeberg* factor "is not limit[ed] . . . to facts relevant to recusal, but rather review[s] the entire proceedings, to include any post-trial proceeding, the convening authority action, the action of the [CCA], or other facts relevant to the *Liljeberg* test." *United States v. Uribe*, 80 M.J. 442, 449 (C.A.A.F. 2021) (citation modified).

14

In *Roach*, the Court found prejudicial error where a recused appellate judge recommended his replacement to the Judge Advocate General of the Air Force (TJAG) after his recusal, and TJAG accepted the recommendation. 69 M.J. at 19. The recused judge "took a procedural step after his recusal" which "created the appearance of directly impacting a case from which he was recused." *Id.* at 20. We accepted the appellant's concession that the error was not structural, noting that notwithstanding the error, the appellant "had his case reviewed by a three-member CCA panel composed of military judges appointed by the TJAG consistent with applicable regulations." *Id.* Accordingly, we tested for prejudice under *Liljeberg* and held:

> The third *Liljeberg* factor is determinative in this case. First, public confidence in the military judicial process is undermined where judges act in cases from which they are recused. This is true, whether the judge's role is significant or minimal. The record supports the CCA's conclusion that "any 'influence' flowing from [the recused judge's] 'recommendation' was at best minimal and resulted in no discernible prejudice to the appellant." Nonetheless, either a military judge is recused or he is not. A military judge who acts inconsistently with a recusal, no matter how minimally, may leave a wider audience to wonder whether the military judge lacks the same rigor when applying the law.

*Id.* at 20-21 (citation omitted); *see also Witt*, 75 M.J. at 384 (holding that the participation of disqualified judges in the Air Force CCA's en banc decision on reconsideration "produced a significant 'risk of undermining the public's confidence in the judicial process,' and thus prejudiced Appellant's substantial rights. Article 59(a), UCMJ" (quoting *Liljeberg*, 486 U.S. at 864)).

The participation of a former military appellate judge who is no longer assigned to the CCA makes the case for prejudice even stronger here. We conclude the third *Liljeberg* factor is dispositive as we did in *Roach*, and we reach the same result: former Chief Judge Smawley's

participation in *Abdullah II* materially prejudiced Appellant's rights.

Appellant asks this Court to set aside the decision of the en banc CCA because two of the judges who participated in the decision were not assigned to the CCA when the decision issued. In light of our conclusions that former Chief Judge Smawley was not eligible to participate in a decision issued after he retired when he was no longer assigned to the CCA and that his participation materially prejudiced Appellant's substantial rights, in our decretal paragraph we set aside that decision of the CCA. As a result, we need not decide whether former Senior Judge Walker was eligible to participate in the decision of the en banc court when she was on terminal leave or whether her participation had a prejudicial impact.

## IV. Conclusion

The decision of the United States Army Court of Criminal Appeals is set aside. The record is remanded for a new Article 66, UCMJ, 10 U.S.C. § 866 (Supp. III 2019-2022) review by a properly constituted en banc court.

Chief Judge OHLSON, with whom Judge HARDY joins, concurring in the judgment.

In my view, the following principles control this case.

In order to be authorized to participate in deciding a United States Court of Criminal Appeals (CCA) case, a person must be properly serving as a CCA judge. *United States v. Lane*, 64 M.J. 1, 7 (C.A.A.F. 2006) ("Only a properly constituted appellate panel can complete the review required by Article 66, UCMJ.").

The Joint Rules of Appellate Procedure for Courts of Criminal Appeals (Jan. 1, 2019, amended through May 17, 2024) [hereinafter JRAP], state that in order for a military officer to properly sit to consider a case en banc, that person must be "in regular active service." JRAP 7(a). And the JRAP further state that a military officer:

> shall be deemed to be in regular active service for purposes of these rules if [he or she is]: (1) in the active component of the armed forces; [or] (2) in the reserve component of the armed forces and serving on active duty with the Court for a period of more than 30 consecutive days.[1]

JRAP 7(b).

Brigadier General (BG) Smawley (Ret.)—through no fault of his own—was no longer "in regular active service" at the time the en banc opinion in this case was finally issued because he had retired.[2] Simply stated, BG Smawley (Ret.) did not fit into any of the categories provided under JRAP 7(b) on the date the opinion in this case was issued.

The date the opinion was issued is key because the Supreme Court has held that a case is not decided until a court issues its decision. *See United States v. American-*

---

[1] The JRAP also have a provision stating when a civilian can serve as a CCA judge. *See* JRAP 7(b). That provision does not apply to the facts of this case.

[2] BG Smawley (Ret.) could have been recalled to active duty and then appointed to the CCA, but that did not happen here. *See* Article 66(a), Uniform Code of Military Justice, 10 U.S.C. § 866(a) (Supp. III 2019-2022).

*United States v. Abdullah*, No. 25-0070/AR
Chief Judge OHLSON, with whom Judge HARDY joins,
concurring in the judgment

*Foreign S.S. Corp.*, 363 U.S. 685, 688 (1960) ("A case or controversy is 'determined' when it is decided."). The Supreme Court noted that a judge's vote is not rendered "immutable at some point in time prior to [an opinion's] public release. . . . [A] judge may change his or her position up to the very moment when a decision is released." *Yovino v. Rizo*, 586 U.S. 181, 184 (2019) (per curiam); *accord United States v. Schreck*, 10 M.J. 374, 374 (C.M.A. 1981) (stating that "[o]n February 2, 1981, we decided this case and three opinions issued").

Accordingly, because BG Smawley (Ret.) retired on October 31, 2024, but the opinion was not issued until November 5, 2024, BG Smawley (Ret.) was not authorized to participate in deciding this en banc CCA case.

In light of these circumstances, for the reasons cited in the majority opinion, *United States v. Abdullah*, __ M.J. __, __ (12-14) (C.A.A.F. 2026), the appropriate remedy is to vacate the CCA's decision and remand for consideration by a properly constituted en banc court. *See Lane*, 64 M.J. at 7.

Because the majority reaches this same result—albeit through a different analytical approach—I concur in the judgment.

Judge HARDY, concurring in the judgment.

I agree with Chief Judge Ohlson that Brigadier General (BG) Smawley (Ret.) was not eligible to participate in the en banc decision below because he was not in regular active service when the case was decided, and I join his opinion in full. I write separately to highlight a foundational constitutional question presented by this case but unaddressed by the parties: whether BG Smawley (Ret.) possessed the authority of an "Officer of the United States" when the United States Army Court of Criminal Appeals (ACCA) issued its en banc decision. *See Buckley v. Valeo*, 424 U.S. 1, 125-26 (1976) (per curiam) (holding "that any appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States' "). I raise this question because the Constitution's Appointments Clause "is more than a matter of 'etiquette or protocol'; it is among the significant structural safeguards of the constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659 (1997). Yet neither Appellant nor the Government discussed this issue in their briefs.

During a flurry of litigation during the 1990s, this Court and the Supreme Court examined the role of military judges on the Courts of Criminal Appeals (CCAs) and resolved several questions about their place in our tripartite federal government. From those cases, we know much about the constitutional status of CCA judges and how their positions relate to the Appointments Clause of Article II of the Constitution.

First, because they exercise significant authority under federal law, CCA judges are officers of the United States who must be appointed pursuant to the Appointments Clause. *Weiss v. United States*, 510 U.S. 163, 169-70 (1994); *Edmond*, 520 U.S. at 654. However, because their work is supervised by other executive branch officers in two separate ways, CCA judges are inferior rather than principal officers under the Constitution.[1] *Edmond*, 520 U.S. at

---

[1] The Supreme Court has interpreted the Constitution as recognizing two types of officers of the United States. Principal officers work independently without supervision from other officers, and inferior officers who are directed and supervised by

665-66. The respective Judge Advocate General (TJAG) of each military branch exercises significant administrative oversight over the CCAs, including the ability to remove CCA judges from their judicial assignments without cause. *Id*. at 664.[2] Additionally, this Court has substantial authority to review the opinions issued by the CCAs. *Id*. at 664-65. Accordingly, because CCA judges are inferior officers with only limited ability to render a final decision on behalf of the United States on their own, Congress may vest their appointment "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2; *Edmond*, 520 U.S. at 665.

Second, because CCA judges are officers of the United States, Congress cannot give TJAGs the power to appoint CCA judges because that power can *only* be conferred on the President, department heads, or a court of law. *Edmond*, 520 U.S. at 658. Thus, the language in Article 66, UCMJ, describing TJAGs' duties in overseeing the CCAs and referring to the appellate judges who are "assigned" to a CCA does not give TJAGs authority to appoint CCA judges. *Id*. TJAGs may only assign existing officers of the United States to serve as CCA judges. *Id*. ("Article 66(a) concerns not the appointment of [CCA] judges, but only their assignment.").

Third, this limitation on TJAGs' authority is not an impediment to staffing the CCAs because all senior military officers—including BG Smawley (Ret.)—are already officers of the United States by virtue of being nominated by the President and confirmed by the Senate.[3] *Weiss*, 510

others who were appointed by presidential nomination with the advice and consent of the Senate. *Edmond*, 520 U.S. at 662-63.

[2] *See also* Article 66(h), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866 ("The Judge Advocates General shall prescribe uniform rules of procedure for Courts of Criminal Appeals and shall meet periodically to formulate policies and procedure in regard to review of court-martial cases in the offices of the Judge Advocates General and by Courts of Criminal Appeals.")

[3] Unlike the other service courts, the judges of the United States Coast Guard Court of Criminal Appeals need not already be officers of the United States because Congress has vested the

U.S. at 170; *see also* 10 U.S.C. § 624(c) (mandating that military promotions for senior officers "shall be made by the President, by and with the advice and consent of the Senate"); 10 U.S.C. § 7037(a) (mandating that general officers in the Judge Advocate General's Corps shall be appointed by "the President, by and with the advice and consent of the Senate"). The President nominated BG Smawley (Ret.) to be a brigadier general in the Army Judge Advocate General's Corps on May 27, 2021, and the Senate confirmed his nomination on June 24, 2021.[4] Because the Supreme Court has expressly rejected the argument that the Appointments Clause requires a second nomination and confirmation by the Senate for a commissioned military officer to be assigned as a CCA judge, *Weiss*, 510 U.S. at 176, there can be no question that the original assignment of BG Smawley (Ret.) to the ACCA satisfied the Appointments Clause and that he was authorized to exercise significant government authority under the Constitution prior to his retirement.

But this case raises a question that the Supreme Court did not answer in the 1990s: whether a commissioned military officer in retired status retains his constitutional authority to exercise the duties of an officer of the United States. According to the Government's affidavit, BG Smawley (Ret.) "relinquished command" on July 22, 2024, underwent a period of transition leave, and retired from the Army on October 31, 2024. The en banc decision below was decided on November 5, 2024, five days *after* BG Smawley (Ret.) formally retired and approximately three months after he relinquished his command. In other words, at the

---

authority to appoint them in the Secretary of Homeland Security, who is a department head. *See* 14 U.S.C. § 507 ("The Secretary may appoint civilian employees of the department in which the Coast Guard is operating as appellate military judges, available for assignment to the Coast Guard Court of Criminal Appeals as provided for in [Article 66(a), UCMJ]."); *see also Edmond*, 520 U.S. at 658.

[4] *See* Nominations PN611, 117th Cong. (2021), https://www.congress.gov/nomination/117th-congress/611/all-info?r=1; 117 Cong. Rec. S4797 (daily ed. June 24, 2021).

time the en banc decision was published,[5] there can be no doubt that BG Smawley (Ret.) had already retired from active duty status.

Neither party addressed what constitutional authority a senior judge advocate officer retains after transitioning to retired status in their briefs. At oral argument, the Government suggested that BG Smawley (Ret.) retained all his relevant authority after his retirement, based on the theory that once a commissioned military officer has been nominated by the President and confirmed by the Senate, he may act as an officer of the United States for the rest of his life. That may well be true as long as the officer stays on (or is recalled to) active duty, but it does not seem consistent with the military's own practice with respect to the authority of military officers after they retire.

There is remarkably little controlling legal authority describing what authorities a military officer retains after retirement. One limitation that Congress has made clear is that "[a] retired officer has no right to command except when on active duty." 10 U.S.C. § 750. But beyond being stripped of that critical authority, the exact legal status of retired military officers is less clear. In a 2023 report about military retirees, the Congressional Research Service observed that retirees "do not participate in military activities, are not subject to fitness standards, are not assigned to specific commands, lack authority to issue orders, and may not serve as panel members for courts-martial." Andres Kuersten, *Military Jurisdiction Over Retired Servicemembers*, LSB10945, at 3, Cong. Rsch. Serv. (Apr. 5, 2023). That report appears to have relied on Judge Tatel's separate opinion in *Larrabee v. Del Toro*, where he made similar observations about the retired enlisted Marines who make up the Fleet Marine Corps Reserve. *See* 45 F.4th 81, 102-03 (D.C. Cir. 2022) (Tatel, J., concurring in part and dissenting in part) (noting that the day-to-day lives of the Fleet Marine Corps Reserve are equivalent to those of

---

[5] I am in complete agreement with my colleagues that this is the critical date for the purposes of this appeal. *See United States v. Abdullah*, __ M.J. __ , __ (9-11) (C.A.A.F. 2026); *Id.* at __ (1-2) (Ohlson, J., concurring in the judgment).

ordinary civilians). Based on these sources, it is not at all clear that retired military officers are empowered to exercise significant government authority as officers of the United States.

At the very least, there is a strong argument that the constitutional authority of BG Smawley (Ret.) as an officer of the United States was suspended once he entered retired status on October 31, 2024. Presumably, that authority could be returned to BG Smawley (Ret.) if the Secretary of the Army ordered him back to active duty pursuant to 10 U.S.C. § 688 and the associated regulations, but nothing in the record suggests that that happened in this case. If BG Smawley (Ret.) participated in the en banc decision below while no longer possessing the authority of an officer of the United States, I find it likely that his participation not only violated the Joint Rules of Appellate Procedure for Courts of Criminal Appeals (Jan. 1, 2019, amended through May 17, 2024), but also the Appointments Clause of the Constitution.